# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| **F.C. BLOXOM COMPANY d/b/a** | ) | |
| **F.C. BLOXOM COMPANY** | ) | |
| **INTERNATIONAL,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| **v.** | ) | **Case Nos. 20-3147** |
| | ) | |
| **TOM LANGE COMPANY** | ) | |
| **INTERNATIONAL, INC., d/b/a** | ) | |
| **SEVEN SEAS FRUIT,** | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

This case is before the Court following an appeal from the formal proceeding before the United States Department of Agriculture ("USDA"), conducted between July 2, 2019, and May 21, 2020, which utilized the documentary procedure under 7 C.F.R. § 47.20. See d/e 71, at 1. Defendant-Appellee Tom Lange Company International, Inc., d/b/a Seven Seas Fruit ("Seven Seas") prevailed before the USDA. See d/e 50, at 7. Plaintiff-Appellant F.C. Bloxom Company d/b/a F.C. Bloxom Company International ("Bloxom") filed a notice

of appeal under 7 U.S.C. § 499g(c).  See d/e 1.  Before the Court is Seven Seas' Motion for Summary Judgment [d/e 50].  Because the Court finds no error with the Secretary's Decision, the Court will grant Seven Seas' motion for summary judgment.

## FACTUAL BACKGROUND

The dispute involves the sale of three loads of onions from Seven Seas to Bloxom.  See d/e 50, at 7.  Seven Seas claims the record establishes that, pursuant to an August 2018 transaction, Seven Seas sold and delivered to Bloxom three loads of onions to the port of Long Beach, California, for the agreed price of $24,045.00--$8,015.00 per load.  Id.  The eventual destination for the onions was to be Honduras where Bloxom's customer, Distribuidora Andy, was located.  See d/e 71, at 2.  Bloxom alleges its employee, Alejandro Hernandez, communicated to Seven Seas' salesperson, Jason Laye, that the onions were to be shipped directly from Seven Seas' supplier to Honduras.  Id. at 2.  Brian Bernard, Bloxom's Export Manager, along with Mr. Hernandez and Mr. Laye, further agreed that Mr. Hernandez would obtain the import permit issued by the Honduran government, and Mr. Bernard would work with the freight forwarder, the Mediterranean Shipping Company, to secure a spot on the ship

2

sailing to Honduras.  Mr. Laye would source the onions, arrange for transport to the Port of Long Beach, and obtain the required phytosanitary certificate.  Id. at 2-3.  Bloxom states that a phytosanitary certificate is issued following an inspection of onions by the USDA or other official agency and is ordinarily issued at the point of origin.  Id. at 3.

Bloxom claims that on or about August 14, 2018, shipping containers holding the onions were loaded onto the M/V Channe at the Port of Long Beach in California.  Id.  The vessel sailed from Long Beach and made at least two stops during the voyage to Honduras. Id.  The onions were expected to arrive in Honduras on or about August 29, 2018.  Id.  Seven Seas alleges that after Bloxom, as exporter of record, accepted and shipped the onions to its customer in Honduras, Bloxom realized it had failed to obtain a phytosanitary certificate for each of the three loads of onions before they left the United States.  See d/e 50, at 7.

Bloxom contends that throughout the approximately 14-day voyage from Long Beach to Honduras, Mr. Laye repeatedly assured Bloxom that the phytosanitary certificates existed and that he sent them directly to Distribuidora Andy in Honduras.  See d/e 71, at 3.

Mr. Laye also stated he would email a copy of the certificate to Mr. Bernard so that he could forward it to Honduras in advance of the original document to speed up the import process.  Id.

Bloxom claims that on or about September 4, 2018, Mr. Laye for the first time confessed that there were no phytosanitary certificates for the three containers of onions.  Id.  The three containers were then detained and quarantined at the port in Honduras because there were no certificates permitting them to be imported into that country.  See d/e 50, at 7.  Eventually, the onions were returned to the United States for potential resale.  Id.

Bloxom alleges there is no evidence that Mr. Laye disputed or disclaimed responsibility for obtaining the phytosanitary certificates to Bloxom.  See d/e 71, at 4.  Because the onions could not be sold or destroyed in Honduras without the phytosanitary certificates, Mr. Laye and Mr. Bernard agreed that the only remaining option was to return the onions to the United States in order to mitigate damages.  Id.  Bloxom claims that the freight forwarder strongly recommended that Bloxom demand return of the onions to the Port of Long Beach, which would allow Bloxom to handle salvage of the onions and was also a less expensive shipping route.  Id.  Mr. Laye, however, asked

Bloxom to agree for Laye to ship the onions to Jacksonville, Florida, arguing that Seven Seas' contacts in the area would ensure a quick sale of the onions if they arrived in marketable condition. <u>Id</u>. The parties executed a written agreement to deliver the onions to Jacksonville for Seven Seas to attempt to resell them for Bloxom. <u>See</u> d/e 50, at 8.

Bloxom states that the ship carrying the onions arrived in Jacksonville on December 20, 2018. <u>See</u> d/e 71, at 4. As part of the arrangement, Seven Seas agreed to retrieve the onions from the port, have them inspected, and if possible, sell the onions. <u>Id</u>. Seven Seas claims that by the time the onions arrived in Jacksonville and were released from the shipping company, the onions were rotten and had to be destroyed. <u>See</u> d/e 50, at 8. Bloxom contends Seven Seas did not pick up the onions at the port until sometime in January, amassing substantial demurrage and detention costs, which Seven Seas demanded Bloxom agree to pay in exchange for Seven Seas collecting the onions at the port and handling salvage as previously agreed. <u>See</u> d/e 71, at 4. Moreover, there is no evidence that Mr. Laye at any time told Bloxom or anyone else that the fiasco was caused by Bloxom. <u>Id</u>. If Mr. Laye had believed so at the time, it is

5

unlikely Laye would have spent months working with Bloxom, the Mediterranean Shipping Company (the vessel operator), and others to determine what could be done with the onions while in Honduras, that he would have arranged for the return of the onions, or that he assumed responsibility for handling the onions when they were returned to the United States.  Id. at 4-5.

Bloxom states that on January 16, 2019, Rebecca Wilson, Vice President of Tom Lange International, who both supervised Mr. Laye and reported to the top-level management of Seven Seas' parent company, filed an informal complaint with the USDA on the basis that Bloxom failed to pay Seven Seas for the onions.  See d/e 71, at 5.  At the time, the onions remained in the possession of Seven Seas. Id.  Bloxom further claims that on February 5, 2019, after discussions between Bloxom's Vice-President, William Bloxom, and Heather Kinney, in-house counsel for Tom Lange International, Mr. Bloxom signed an agreement stating that Seven Seas would pay $20,000 on behalf of Bloxom for the release of the onions in Jacksonville so that they could be inspected and sold if possible.  Id.

Seven Seas claims that pursuant to the written agreement, it paid $21,135.90 to the shipping company on Bloxom's behalf to

obtain the release of the onions, and Seven Seas also incurred an additional $21,400.11 for drayage, devanning, inspections, and destruction of the onions.  See d/e 50, at 8.  The onions arrived rotten and were a total loss.  See d/e 71, at 5.

Bloxom states that Ms. Wilson's informal complaint resulted in an informal finding by the USDA in Bloxom's favor.  Id.  Bloxom alleges that having reported to company management that Ms. Wilson had the situation with Bloxom "under control," Ms. Wilson was now faced with either disclosing this loss or proceeding with a contrived story designed to protect Mr. Laye and preserve her role within the company.  Id. at 5-6.  On July 2, 2019, Seven Seas filed a formal complaint before the USDA.  Id. at 6.

Seven Seas claims that, after Bloxom refused to pay Seven Seas the onion invoices and for the transportation and other costs due under the written letter agreement, Seven Seas commenced reparation proceedings before the Secretary to recover damages.  See d/e 50, at 8.  The parties filed several sworn statements with exhibits with the Secretary that are part of this record under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. § 499g(c).  Id.

Seven Seas alleges that, during the reparation proceedings, Bloxom maintained that it, as exporter of record, delegated its obligation to obtain the phytosanitary certificates to Seven Seas, which allegedly agreed to obtain them as part of the parties' written sales contract. Id. Bloxom alleges it prepared and emailed three separate purchase orders to Mr. Laye's personal email account which expressly required Seven Seas to deliver the certificates to Bloxom by facsimile before Bloxom loaded the onions on the ship for export. Id. Seven Seas contends no such email exists, and the first time Seven Seas saw the purchase orders was during the reparation proceeding, and Bloxom elected to ship the onions to Honduras without the certificates in its possession. Id.

Seven Seas states the Secretary found Bloxom failed to establish that its purchase orders providing instructions with respect to obtaining the certificates were sent to Seven Seas, and Bloxom has not otherwise established that the requirement for securing the certificates was communicated to Seven Seas and made a part of the parties' contracts. Id. at 8-9. The Secretary concluded Bloxom failed to establish that Seven Seas breached the contracts by failing to ensure that the certificates were obtained at the shipping point. Id.

8

at 9.  Seven Seas contends Bloxom cannot overcome these findings and now acknowledges Bloxom cannot produce any email transmitting the purchase orders to Seven Seas.  <u>Id</u>. at 9.  Moreover, without proof of any correspondence transmitting the purchase orders to Seven Seas or evidence as to when the purchase orders were created, modified, printed, or emailed, Bloxom cannot meet its burden of proof to rebut the Secretary's finding that Bloxom failed to communicate to Seven Seas that Seven Seas was required to secure the phytosanitary certificates as part of the parties' contracts.  <u>Id</u>. Bloxom alleges Seven Seas' win before the USDA is exclusively premised on Mr. Laye's unrebutted sworn statements.  <u>See</u> d/e 71, at 6.  Bloxom further alleges that, "[w]hile the appeal proceeds as a trial de novo under 7 U.S.C. § 499g(c), Seven Seas and its counsel have engaged in a consistent pattern of dishonesty, consistent efforts to obstruct and undermine F.C. Bloxom's ability to take nearly every deposition in this case."  <u>Id</u>.  Bloxom also claims that Seven Seas has produced a large number of documents and communications in this appeal that are fundamentally different from the documents and communications cited by Seven Seas in the proceedings before the USDA bearing the same participants, dates, and times.  <u>Id</u>.

Seven Seas claims that, even if Bloxom can produce sufficient evidence to overcome the Secretary's finding and prove that the purchase orders were delivered to Seven Seas before the onions left the dock--which Seven Seas disputes--or Bloxom otherwise can prove that Seven Seas was required to secure the certificates before the onions were shipped, summary judgment should still be entered Seven Seas' favor. <u>See</u> d/e 50, at 9. Seven Seas states as the exporter of record, Bloxom had the obligation to provide the certificates as a condition of the onions' importation into Honduras. <u>Id</u>. Seven Seas contends that, if Bloxom was not in possession of the certificates, Bloxom should have (1) rejected the onions at the Port of Long Beach because of Seven Seas' failure to timely provide the certificates; (2) accepted the onions under an express reservation of rights pursuant to U.C.C. § 1-308; or (3) arranged to have the onions inspected and certificates issued before the onions were loaded and shipped. <u>Id</u>. Seven Seas alleges that because Bloxom accepted the onions when it loaded them onto the ship, Bloxom became liable for the full contract price. <u>Id</u>. at 10.

Bloxom claims the case turns on two main points: the original purchase orders and the documents and communications between

Mr. Laye and others related to the sale.  <u>See</u> d/e 71, at 6.  Bloxom states it has imaged all potential sources of ESI and has responded to all discovery propounded by Seven Seas.  <u>Id</u>.  This includes the written discovery required by the Federal Rules of Civil Procedure, in addition to Bloxom's responses to Seven Seas' discovery requests.  <u>Id</u>. at 6-7.  Bloxom claims its repeated efforts to obtain information from Seven Seas and Mr. Laye have been unsuccessful because they refuse to comply with discovery requests.  <u>Id</u>. at 7.

Bloxom contends that awarding summary judgment at this juncture would be premature because Seven Seas has failed to comply with three requests for production, two sets of interrogatories, one request for admission, and at least four subpoenas.  <u>Id</u>. Additionally, Mr. Laye walked out of his January 27, 2022, deposition at the suggestion of Seven Seas' then-attorney.  <u>Id</u>.  According to Bloxom, this occurred when the questions elicited responses evidencing Mr. Laye's perjury in sworn statements submitted to and relied upon by the USDA.  <u>Id</u>.

Bloxom states that while it has been producing responsive discovery to Seven Seas, Bloxom has received little of the evidence known to exist.  <u>Id</u>. at 8.  Bloxom claims that, by failing to comply

with discovery requests and moving for summary judgment, Seven Seas is preventing Bloxom from getting any evidence in this case.  <u>Id</u>.

Bloxom asks the Court to take judicial notice of the fact that Mr. Laye's sworn statements relied upon by the USDA in finding in favor of Seven Seas were fraudulently produced by Laye.  <u>Id</u>.  Bloxom claims it learned during discovery that Seven Seas maintains two different versions of certain communications and documents.  <u>Id</u>. at 9.  Bloxom does not explain the basis for this assertion except for suggesting that Seven Seas' failure to comply with discovery requests limits Bloxom's knowledge about Seven Seas' documents and communications.  Bloxom states it has reason to believe that other documents and communications exist that show Mr. Laye acknowledging his responsibility to acquire the phytosanitary certificates.  <u>Id</u>.  Bloxom possesses portions of communications that include Mr. Laye as a participant, where Mr. Laye states that he is responsible for obtaining the phytosanitary certificates and that he will do so.  <u>Id</u>.

There are numerous pending motions related to discovery.  <u>See</u> d/e 57, 59, 75, 78, 79, 80, 84, 85, 86, 92, 93, 94, 95, & 97.   There is also a miscellaneous case related to Mr. Laye.  <u>See</u> <u>F.C. Bloxom</u>

<u>Co. v. Jason Laye</u>, Case No. 3:22-mc-03005.  In that case, Bloxom moves to compel Mr. Laye's compliance with subpoenas and compel a forensic examination of Mr. Laye's phone.  Bloxom also moves for contempt and for sanctions against Mr. Laye.  <u>Id</u>. at d/e 6.  Bloxom contends additional time to complete discovery is necessary because of Seven Seas' alleged failure to comply with discovery. <u>Id</u>.

Bloxom argues that, for this motion for summary judgment, Seven Seas did not rely on the findings of fact from the USDA decision.  Rather, Seven Seas' undisputed material facts rely heavily on its victory, which is based on the affidavit of Mr. Laye, who Bloxom claims "clearly perjured himself during his deposition."  <u>Id</u>. at 9-10.  Bloxom contends the motion for summary judgment should be denied on that basis.

While Seven Seas' summary judgment motion was pending, Bloxom filed a motion seeking leave to conduct additional discovery and for leave to supplement its summary judgment response with information received during the discovery process.  <u>See</u> d/e 94.  The Court granted the motion in part, allowing Bloxom to file a supplement to the response limited to information obtained after the filing of its response to the motion for summary judgment.  <u>See</u> Text

Order of Sept. 1, 2022.  Seven Seas was granted leave to reply to the supplemental response.  See id.  Accordingly, the parties have supplemented the summary judgment record.  See d/e 98, 99, & 100.

## DISCUSSION

### Legal standard

Summary judgment is appropriate if the motion is properly supported, and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The Court views the evidence and construes all reasonable inferences in favor of the non-movant.  See Driveline Systems, LLC v. Arctic Cat, Inc., 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).  "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence."  Driveline Systems, 36 F.3d at 579 (internal quotation marks omitted). Ultimately, there must be enough evidence in favor of the non-

movant to permit a jury to return a verdict in its favor.  See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

The findings of fact and the orders of the Secretary of Agriculture in a reparation proceeding under Section 7(a) of the Perishable Agricultural Commodities Act (7 U.S.C. § 499g(a)) "shall be prima facie evidence of the facts therein stated."  Farris v. Meyer Schuman Co., 115 F.2d 577, 579 (7th Cir. 1940); see also 7 U.S.C. § 499g(c) ("Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima facie evidence of the facts therein stated.").  "[T]he facts found by the Secretary shall stand as the established facts until sufficient evidence is produced on the trial to overcome them."  Farris, 115 F.2d at 579 (finding that the facts found by the Secretary of Agriculture were established when the appellant offered no evidence to contradict the Secretary's findings); United Potato Co., Inc. v. Burghard & Sons, Inc., 18 F. Supp.2d 894, 897 (N.D. Ill. 1998) (a party must present evidence to overcome the "prima facie finding" of the Secretary).

Bloxom claims that the summary judgment motion which was filed three months before the discovery deadline is premature and should be denied under Rule 56(d)(2), which provides that if a non-movant establishes it "cannot present facts essential to justify its opposition," the Court may "allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2).

## **Obligation to obtain phytosanitary certificates**

In support of Seven Seas' motion, Seven Seas claims the undisputed facts show that Bloxom has failed to provide proof that the purchase orders allegedly delegating to Seven Seas its obligation to provide phytosanitary certificates for export were provided to Seven Seas. See d/e 50, at 22. Moreover, Bloxom has failed to comply with discovery requests demanding evidence that the purchase orders were sent to Seven Seas. Id. Additionally, Seven Seas claims Bloxom cannot overcome the Secretary's finding that the purchase orders were not delivered to Seven Seas. Id. at 24. Seven Seas further asserts that, if the parties' agreement was adduced to writing as Bloxom claims, the agreement does not comply with the Statute of Frauds as required. Id. To satisfy the merchant exception to the

Statute of Frauds, there must be proof that written confirmation of the sale was sent to the counter-party.  <u>See</u> U.C.C. § 2-201(2). Bloxom now admits that it cannot meet this burden of proof because Bloxom did not send the purchase orders to Seven Seas before the onions shipped.  <u>See</u> d/e 71, at 40.

Bloxom alleges the undisputed facts show that it did delegate to Seven Seas its obligation to obtain phytosanitary certificates.  <u>See</u> d/e 71, at 38.  Bloxom asserts Seven Seas failed to make any discovery request demanding the evidence that the purchase orders were sent to Seven Seas.  <u>Id</u>. at 39.  Bloxom further contends that the undisputed facts establish that Seven Seas was aware of its obligation to obtain the phytosanitary certificate even without the purchase orders, and Seven Seas acted in a manner consistent with the existence of an agreement that Seven Seas had an obligation to obtain the phytosanitary certificates.  <u>Id</u>. at 42.  Moreover, Bloxom could not have known that the goods were non-conforming when delivered to the Port of Long Beach.  <u>Id</u>. at 45.

In Bloxom's response to the summary judgment motion, Bloxom admits that it did not send purchase orders to Seven Seas before the

onions shipped, stating "[T]he purchase order would never be produced prior to the sale.  That would be like expecting receipts for items before they were purchased."  See d/e 71, at 40.  This is a change in position for Bloxom.  In its answer filed in the reparation proceedings, Bloxom stated, "At Jason Laye's request, these PAM transmissions were sent to him at sbchamps@aol.com before the loads shipped."  See d/e 46-10 at ¶ 5.  In Bloxom's response to Seven Seas' interrogatories regarding transmission of the purchase orders, Bloxom stated "it appears that each Purchase Order was sent by email to Jason Laye to sbchamps@aol.com on August 3, 2018."  See d/e 50-3, Response to Interrogatory No. 14.  If the purchase orders were not provided to Seven Seas, then Seven Seas would not have known it was required to "express mail original and copy of the Federal Phyto to Jetstream Freight Forwarding, Inc. . . . [and that the] USDA inspection must be faxed to F.C. Bloxom Company International before loading."  See d/e 50-6, Exhibit 5.

Bloxom has not provided any support for its assertion that Seven Seas received the purchase orders before the reparation proceedings commenced.  Although Bloxom claims that "[e]mail and

text communications demonstrate that Seven Seas received the purchase orders and that it undertook the responsibility of obtaining the phytosanitary certificate," <u>see</u> d/e 71, at 39, Bloxom fails to cite to any email or text communications in support of those assertions. While Bloxom alleges it "has communications that indicate not only that Seven Seas received the purchase orders, but that Laye was aware that he was expected to obtain the phytosanitary certificates for these onions," <u>see</u> <u>id</u>. at 42, Bloxom does not include any such communications as exhibits in support of its brief in opposition to the summary judgment motion.

Additionally, Bloxom claims it "can demonstrate through communications that Seven Seas was aware of its obligation and failed to uphold it," <u>see</u> <u>id</u>. at 38-39, yet Bloxom cites no communication in support of that claim.  In William Bloxom's Declaration in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, William Bloxom states that he has "no reason to believe that Mr. Laye did not receive the purchase orders or that he did not know it was Seven Seas' responsibility to secure the phytosanitary certificates."  D/E 68, ¶ 10.  This statement does

not indicate that Mr. Bloxom has reason to believe Mr. Laye did in fact receive the purchase orders or knew that it was Seven Seas' responsibility to secure the phytosanitary certificates.  Mr. Bloxom makes no reference to any communication confirming the delivery of the purchase orders or any proof that the purchase orders were actually created before January 31, 2019.  Bloxom has presented only speculation and no proof that Seven Seas received the purchase orders before the reparation proceedings were commenced.  As reflected in Exhibit 8 to Seven Seas' reply brief, Bloxom has submitted proof that the purchase orders were created on or after January 31, 2019, during the reparation proceedings.  Bloxom now admits that the purchase orders were not sent to Seven Seas before the onions shipped on August 14, 2018.

Accordingly, it is undisputed that the purchase orders were not sent to Seven Seas before the onions shipped on August 14, 2018. Bloxom has failed to produce any evidence in support of the assertion that Seven Seas received the purchase orders before the reparation proceedings were commenced.  The record further establishes that the purchase orders were created on or after January 31, 2019,

during the reparation proceedings.  See d/e 81-1.  Based on the foregoing, Seven Seas would not have known it was required to "express mail original and copy of the Federal Phyto to Jetstream Freight Forwarding, Inc. . . . [and that the USDA inspection] must be faxed to F.C. Bloxom Company International before loading," as stated on the purchase orders.  See d/e 50-6, Ex. 5.  Therefore, the Secretary correctly determined that Bloxom did not establish that purchase orders with instructions concerning obtaining the certificates were sent to Seven Seas.  Additionally, Bloxom points to no documentation or communication that Mr. Laye or anyone on behalf of Seven Seas was aware of Seven Seas' alleged obligation to obtain the phytosanitary certificates before the onions were loaded and left the dock.  Seven Seas is entitled to summary judgment.

### Bloxom's acceptance of the goods

The Court further finds that, even assuming Bloxom could produce enough evidence to overcome the Secretary's finding and prove that the purchase orders had been delivered to Seven Seas before the onions were shipped, or Bloxom could otherwise prove that Seven Seas was required to obtain the certificates before the onions

left the dock, Seven Seas would still be entitled to summary judgment because Bloxom accepted the onions upon delivery.

The Uniform Commercial Code provides, "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."  <u>See</u> U.C.C. § 2-301.  The Secretary found, "Respondent accepted the subject loads of onions and has not established a breach of contract by Complainant."  <u>See</u> Reparation Order, d/e 54-4, at 21.

In Bloxom's summary judgment response, Bloxom acknowledges that "[o]n or about August 14, 2018 shipping containers holding the onions were loaded onto the M/V Channe at the Port of Long Beach in California."  D/E 71, at 3.  Acceptance of goods occurs when, among other things, the buyer "does any act inconsistent with the seller's ownership."  U.C.C. § 2-606(1)(c).  In the Reparation Proceeding, Bloxom admitted that "[i]n response to [Seven Seas'] allegations, [Bloxom] states it accepted the sealed containers at the Port of Long Beach on the belief that all the correct documents necessary for the export were generated and in transit. (Answer and Counterclaim ¶ 10.)"  D/E 54-4, at 17.  There is no

dispute that Bloxom accepted the goods and loaded them on the ship even though Bloxom did not have phytosanitary certificates in hand from Seven Seas.

Further, it is undisputed that, even after Bloxom realized it did not have the phytosanitary certificates, Bloxom never revoked acceptance of the onions pursuant to U.C.C. § 2-602.  Bloxom claims there was "no indication to Bloxom that anything was amiss with the onions" to prompt it to revoke acceptance.  <u>See</u> d/e 71, at 45.  While Bloxom alleges it did not find out that Seven Seas failed to obtain the phytosanitary certificates until the onions had reached Honduras, the Secretary found that Bloxom could have accepted the onions at the port of Long Beach under a reservation of rights and arranged for them to be inspected.  The Secretary also found, Bloxom "could have secured the necessary documents before the onions were loaded onto the ocean vessel."  D/E 54-4, at 21.  Even assuming the parties had an agreement as Bloxom alleges that Seven Seas was to obtain the phytosanitary certificates, Bloxom was supposed to receive a fax from Seven Seas "before loading" with the USDA inspection as indicated on the alleged purchase orders.  <u>See</u> d/e 50-6.  Because there was

no fax, Bloxom should have known the goods were not in compliance with the alleged purchase orders that were prepared by Bloxom. Bloxom neither rejected nor revoked acceptance of the non-conforming goods. Bloxom's act of loading the onions on the M/V Channe for transport to Honduras is fundamentally inconsistent with the rejection or revocation of acceptance of the goods. <u>See</u> U.C.C. § 2-606(1)(c) (noting that acceptance of goods occurs when the buyer "does any act inconsistent with the seller's ownership.") That act constituted acceptance of the onions.

Furthermore, even if the purchase orders were actually delivered to Seven Seas, Bloxom was required to provide notice to Seven Seas so that it could cure its alleged failure to provide the phytosanitary certificates. <u>See</u> U.C.C. § 2-605(1)(a) ("The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach where the seller could have cured it if stated seasonably").

The Secretary correctly determined that Bloxom, as the exporter, "bore ultimate responsibility for ensuring that the onions

were accompanied by the appropriate documentation necessary for their import into that country." D/E 54-4, at 18. Additionally, Bloxom "acknowledges that as exporter of record and seller of the onions to its customer in Honduras, [Bloxom] was responsible for providing proper documentation to its client's freight forwarder," the Mediterranean Shipping Company. Id. at 19.

If, as Bloxom alleges, Bloxom was supposed to receive a fax from Seven Seas "before loading" with the USDA inspection as indicated on the alleged purchase orders, see d/e 50-6, Bloxom would have known upon not receiving a fax that the goods were not in compliance with the alleged purchase orders. Bloxom cannot claim that it was "difficult" to discover the alleged defect because Seven Seas was supposedly required to fax the phytosanitary certificates to Bloxom before the onions were loaded onto the ship. Accordingly, the Secretary correctly determined that Bloxom's "statement that it would not be able to discover that the onions were not accompanied by the necessary phytosanitary certificates before the containers were loaded onto the ocean vessel has no merit." D/E 46-16, at 21. Bloxom could have accepted the goods under a reservation of rights

and arranged for them to be inspected.  Id. (Bloxom "could have secured the necessary documents before the onions were loaded onto the ocean vessel").  Under U.C.C. §§ 602 and 606, a buyer's failure to reject non-conforming goods within a reasonable time and seasonable notification of the seller is deemed acceptance.   The record establishes Bloxom accepted the goods outright and without condition.

Pursuant to UCC § 2-606(1)(c), Bloxom's act of loading the onions onto the M/V Channe to be brought to Honduras on August 14, 2018, is inconsistent with the rejection or revocation of acceptance of the onions.

Bloxom did not receive the phytosanitary certificates by fax or overnight mail.  Bloxom did not provide notice to Seven Seas to cure its alleged failure to provide the phytosanitary certificates.  There is no evidence that Bloxom reached out to Seven Seas before Bloxom accepted and shipped the onions on August 14, 2018.  Because Bloxom did not reject the goods at the Port of Long Beach, Bloxom accepted the onions by loading them on to the ship.  Because Bloxom did not revoke acceptance at any point thereafter, Bloxom became

liable for the full contract price.  Seven Seas is entitled to summary judgment on this basis as well.

### Additional discovery is unnecessary

Bloxom alleges the pending motions to compel demonstrate the obvious need for continued discovery and denial of the "premature" motion for summary judgment.  <u>See</u> d/e 71, at 31.  Because certain conclusions reached by the USDA in its Reparation Order are based on unrebutted statements of Jason Laye, Bloxom claims it must be permitted to complete Mr. Laye's deposition.  <u>Id</u>. at 33.  Bloxom also claims that additional depositions are necessary of individuals who were served with and responded to document subpoenas.  <u>Id</u>. at 37.

Unless a local rule or case-specific order provides otherwise, "a party may file a motion for summary judgment at any time until 30 days after the close of discovery."  Fed. R. Civ. P. 56(b).  Rule 56(d)(2) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."  Fed. R. Civ. P. 56(d)(2).  Bloxom relies on the Declarations of its attorneys, Katy Esquivel [d/e 69] and

Michael Connick [d/e 70].  Both counsel claim that discovery is necessary concerning the purported conduct of Jason Laye concerning his obligation to obtain the phytosanitary certificates, what he agreed to in connection with the sale of the onions to Bloxom, what could have been done to mitigate the loss, and any alleged damages sustained by Seven Seas.  Ms. Esquivel and Mr. Connick further state that this discovery was not completed due to the tactics of Seven Seas, Mr. Laye, and counsel for them.

Bloxom also suggests that Mr. Laye and Seven Seas acted in a manner consistent with having an agreement that it was Laye's responsibility to obtain the phytosanitary certificates.  See d/e 71, at 44-45.  Specifically, Seven Seas' actions between August of 2018 and February of 2019 in attempting to salvage the onions for sale were consistent with the existence of an agreement to obtain the phytosanitary certificates.  Id. at 45.  As Seven Seas alleges, however, those steps are more accurately characterized as remedial measures taken in good faith to help its customer salvage the onions.  See d/e 81, at 13-14.  Moreover, these actions were taken after Bloxom

accepted and shipped the onions and were outside the initial contract for the sale of the onions.

The Court finds no basis for granting Bloxom's request for additional discovery.  Discovery would not be probative of whether Bloxom ever received the phytosanitary certificates by fax or overnight mail.  There also is no need for discovery regarding whether Bloxom reached out to Seven Seas before Bloxom accepted and shipped the onions on August 14, 2018.  Bloxom would have a record of any such communication if it existed.  Similarly, Bloxom would have documentation if it had revoked acceptance of the goods.  The record establishes that Bloxom accepted the onions, did not reject the onions at the Port of Long Beach, or ever revoked acceptance at any time.  The Court concludes that further discovery on these issues is unnecessary.  Bloxom has failed to show that additional discovery is warranted.

## CONCLUSION

Summary judgment is warranted in favor of Seven Seas because the record establishes the purchase orders referencing Seven Seas' obligation to obtain the phytosanitary certificates were not sent by

Bloxom to Seven Seas before the onions shipped. However, even assuming Seven Seas were obligated to provide the phytosanitary certificates pursuant to the alleged (1) delivery of the purchase orders, (2) oral agreement, (3) or course of doing business, the undisputed terms of the contract required Seven Seas to deliver the phytosanitary certificates to Bloxom by fax and/or FedEx before the onions were shipped to Honduras. Bloxom accepted and did not reject the onions and shipped them to Honduras without receiving a fax or FedEx with the phytosanitary certificates. Therefore, even if Seven Seas was required to obtain the phytosanitary certificates, Bloxom waived that requirement by accepting and shipping the onions without the phytosanitary certificates. The Court further finds that, as the prevailing appellee, Seven Seas "shall be allowed a reasonable attorney's fee to be taxed and collected as part of his costs." See 7 U.S.C. § 499g(c).

For these reasons, the Motion of Defendant-Appellee Tom Lange Company International, Inc. d/b/a Seven Seas Fruit [d/e 50] is GRANTED.

The Clerk is DIRECTED to enter a monetary judgment in favor of Seven Seas and against Plaintiff-Appellant F.C. Bloxom Company in the amount of $66,581.01, plus interest at the rate of 1.5% (18% per annum) on the original sales contract amount of $24,045.00 from August 9, 2018, through the date judgment is entered, plus a handling fee of $500, plus pre-judgment interest on $42,536.01 at the rate of 0.15% per annum from May 21, 2020, through the date judgment is entered, plus attorneys' fees to be computed pursuant to Central District of Illinois Civil Local Rule 54.1, plus costs to be taxed by the Clerk pursuant to 7 U.S.C. § 499g(c).

The Clerk will terminate all pending motions and close this case.

ENTER: November 17, 2022

FOR THE COURT:

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT COURT